UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Mark Fisher

   v.                                    Civil No. 16-cv-176-JD
                                         Opinion No. 2016 DNH 184
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


Mark Fisher seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for supplemental security income.  In support, Fisher contends that the Administrative Law Judge ("ALJ") erred in finding that he was not disabled because substantial evidence supports the issues he raises and that the Acting Commissioner failed to meet her burden of showing that jobs exist that he could do.  The Acting Commissioner moves to affirm the decision.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater,

172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

As a preliminary matter, Fisher, who is represented by counsel, misunderstands the standard of review.  In support of his motion to reverse the Acting Commissioner's decision, he argues that substantial evidence supports the issues he raises and contends that the ALJ's findings were, therefore, erroneous.  Even if substantial evidence supports Fisher's claims of error, the court will affirm the Acting Commissioner's decision as long as substantial evidence in the record also supports the ALJ's findings.  See, e.g., Nguyen, 172 F.3d at 35 ("The ALJ's findings of fact are conclusive when supported by substantial evidence . . . ."); Misterka v. Colvin, 2016 WL 5334656, at *6-*7 (D. Mass. Sept. 22, 2016) (As long as substantial evidence supports the ALJ's finding, "it is not for this court to re-weigh the evidence." [internal quotation marks omitted]).

Despite counsel's mistake, the court will review Fisher's claims under the applicable standard of review.

Background

Fisher applied for supplemental security income under Title XVI on July 8, 2013, alleging disability due to a variety of impairments, including cirrhosis of the liver. He was forty-eight years old when he applied. He had completed the ninth grade and had worked as a janitor, a machine operator, and a security guard.

Fisher was diagnosed with non-alcoholic steatohepatitis ("NASH") in 2013 that progressed to cirrhosis of the liver. He was hospitalized from June 29 to July 1, 2013, based on his family's report that he was confused and talking nonsense. On intake, the assessment noted was "delirium prob. Metabolic/hepatic encephalopathy with hyperammonemia -- ? NASH vs. Etoh liver ds—His LFT patters w liver ds, but pt. And wife denies any use of etoh for few years." The urine test in the emergency room was negative for alcohol. Fisher's mental status screening and neurological examinations at the hospital were normal. On discharge, he was diagnosed with hepatic encephalopathy.

Fisher was hospitalized in September of 2013 for gastrointestinal bleeding. His neurological and psychiatric

examinations were normal. Lactulose, a medication to treat advanced liver disease, was added to Fisher's medication regimen.

Dr. Johnathan Jaffe, a state medical consultant, reviewed Fisher's medical records and issued a report on September 30, 2013. Dr. Jaffe concluded that Fisher could do light work but would need to avoid concentrated exposure to hazards such as machinery.

From October 6 to October 8, 2013, Fisher was again hospitalized because of hepatic encephalopathy. Fisher's wife reported that Fisher had had several episodes of confusion along with dizziness and had acted as though he were drunk. Fisher's urine screen was negative for alcohol. On admission, he was diagnosed with altered mental status that was suspected to be caused by acute hepatic encephalopathy which was likely because of inadequate lactulose. His dose of lactulose was increased, and he improved. At a follow up appointment with Dr. Knight, Fisher reported being tired but denied any neurological or psychiatric problems.

Fisher was hospitalized again for hepatic encephalopathy from November 17 to November 18, 2013. His wife reported that he had been more spaced out and had had staring episodes, and

4

Fisher said that he had been feeling loopy. His psychiatric and neurological examinations were normal. At his follow up appointment, Fisher's treating physician, Dr. Eric Knight, reported that Fisher had acute hepatic encephalopathy due to liver cirrhosis secondary to NASH. Fisher said he was back to normal except for being tired.

Other medical records note liver cirrhosis secondary to NASH, diabetes, carpal tunnel syndrome, along with other medical issues.

A hearing before an ALJ was held on December 18, 2014. Fisher testified about his background and the effects of his illness and other issues. A vocational expert testified about jobs that could be done based on the ALJ's hypothetical descriptions of limitations. The ALJ issued his decision on January 23, 2015.

The ALJ found that Fisher retained the ability to do work at the light exertional level with only occasional postural activities and avoiding ladders, ropes, scaffolds, and hazards. Based on that residual functional capacity assessment, the ALJ found that Fisher could work as a price marker, a laundry classifier/sorter, and a bench assembler. For that reason, the ALJ found that Fisher was not disabled.

Fisher filed an appeal with the Appeals Council and submitted an opinion from Dr. Knight. The Appeals Council denied review, making the ALJ's decision the final decision of the Acting Commissioner.

## Discussion

Fisher contends that the ALJ erred in finding that his impairments do not meet or equal the requirements of the listed impairment at § 5.05(F)[1], erred in failing to give controlling weight to the opinions of his treating physician, and erred at step four in finding that he had a residual functional capacity to work at the light exertional level. Fisher also contends that the Acting Commissioner failed to meet her burden at step five of showing that jobs exist that he could do. The Acting Commissioner moves to affirm, arguing that the decision is supported by substantial evidence.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 416.920. The claimant bears the burden through the first four steps of proving that her

---

[1] The listings are found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

impairments preclude her from working.[2]  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

Although Fisher challenges the Acting Commissioner's decision on a variety of grounds, the problems with the step three finding require remand.  Therefore, the other issues need not be addressed here.

At step three, the ALJ considered § 5.05, which pertains to chronic liver disease, along with two other listings.[3]  The ALJ found that Fisher did not have an impairment or combination of impairments that met or medically equaled a listing, including

---

[2] The first four steps are (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether the impairment meets or equals a listed impairment; and (4) assessing the claimant's residual functional capacity and his ability to do his past relevant work.  20 C.F.R. § 416.920(a).

[3] An impairment or combination of impairments meets a listed impairment if they are medically determinable and satisfy all of the criteria of the listing.  20 C.F.R. § 416.925.  An impairment or combination of impairments medically equals a listed impairment if, an unlisted impairment or a combination of unlisted impairments "is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  The claimant bears the burden of showing that his impairment or combination of impairments meets or equals a listed impairment.  King v. Colvin, 2016 WL 4442787, at *3 (D.N.H. Aug. 23, 2016).

§ 5.05.  Fisher contends that the ALJ's finding is wrong because his impairments met the criteria for § 5.50(F).  Fisher also contends that the ALJ erred at step three because he did not consider Fisher's impairment due to bilateral carpal tunnel syndrome to determine if that impairment medically equaled a listed impairment.

Chronic liver disease includes hepatic encephalopathy that results in abnormal behavior, cognitive dysfunction, changes in mental status, or an altered state of consciousness, § 5.05(F)(1), and another condition as described in § 5.05(F)(2) or § 5.05(F)(3).  The ALJ found that Fisher did not meet or equal the criteria for § 5.05, without any particularized analysis of the record in relation to the criteria for § 5.05(F).

The parties agree that Fisher has chronic liver disease with hepatic encephalopathy.  The Acting Commissioner also agrees that Fisher satisfies § 5.05(F)(3).  The Acting Commissioner contends, however, that Fisher does not meet the criteria of § 5.05(F)(1) because the record does not show that he had "abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two

8

evaluations at least 60 days apart within a consecutive 6-month period" as required by § 5.05(F)(1).

Fisher argues that he meets the requirements of § 5.05(F)(1) because he was hospitalized three times based on reports that he was experiencing an altered mental state, which occurred on June 29 to July 1, 2013 ("June treatment"), October 6 to October 8, 2013 ("October treatment"), and November 17 to November 18, 2013 ("November treatment").  The Acting Commissioner contends that those incidents do not meet the criteria of § 5.05(F)(1) because the June treatment was before his application date and the October and November treatments are not sixty days apart and because the medical records do not include <u>evaluations</u> of an altered mental state.

A.  <u>Application Date</u>

The medical events to support chronic liver disease under § 5.05 "must occur within the period we are considering in connection with your application." § 5.00(B).  The Acting Commissioner argues that the relevant period for purposes of medical evidence to support a Title XVI case, like Fisher's, begins on the date the claimant files his application.  Fisher argues that the relevant period includes the twelve months that precede the application date.

9

The Acting Commissioner relies on the regulatory restriction as to when benefits can be paid for a claim under Title XVI.  20 C.F.R. § 416.330 & § 416.501; see also Williams v. Colvin, 2016 WL 5468336, at *1 (W.D.N.Y. Sept. 28, 2016); Benson v. Colvin, 2016 WL 4690415, at *3 (W.D. Okla. Sept. 7, 2016); Brown v. Colvin, 2016 WL 4425138, at *6 (D.S.C. Aug. 22, 2016).  Based on that limitation, the Acting Commissioner argues that the June treatment cannot be considered because it occurred before the application date of July 8, 2013.

Fisher argues that the June treatment should be considered for purposes of § 5.05(F)(1) because the Acting Commissioner is required to collect medical records for twelve months before the application date and because the ALJ expressly considered those records.  20 C.F.R. § 416.912(d); see also Halyday v. Colvin, 2013 WL 4678791, at *7 (C.D. Cal. Aug. 30, 2013) (holding that the Acting Commissioner had "not shown that the plaintiff's ineligibility for benefits payments prior to a certain period necessarily dictates the court's (or the ALJ's) ability to examine medical evidence in the record but predating that period").

The ALJ did not provide any analysis of the evidence he considered for purposes of his step three finding so that it is unclear whether he considered the June treatment or not.  As a

result, the ALJ did not address the issue of the relevant period for determining whether Fisher met the criteria of § 5.05(F). Given the import of the issue raised, which could affect other findings at step three, it is appropriate to allow the Social Security Administration to develop the record at the administrative level before the issue is reviewed here.

B. Evaluation

The Acting Commissioner also argues that even if the June treatment evidence were not time barred, the records do not show that Fisher had the required mental abnormalities "present on at least two evaluations at least 60 days apart within a consecutive 6-month period." § 5.05(F)(1). Specifically, the Acting Commissioner contends that although Fisher's family reported when they brought him to the hospital for the June treatment that he was exhibiting symptoms of an altered mental state, the record does not show that he exhibited that condition when evaluated at the hospital. Instead, Fisher's examination was normal.

Fisher argues that his family's reports document abnormal behavior, which need not be based on an evaluation. He also contends that the doctor diagnosed an altered mental status when he was admitted for the June treatment and that an abnormal mental screening test is not required.

As noted above, the ALJ did not provide any analysis of the evidence he considered in making his finding at step three. Consequently, the record does not show if the finding was based on a lack of an abnormal evaluation. The meaning of § 5.05(F)(1) should be addressed in the first instance by the Social Security Administration in its administrative proceedings. Once that determination is made, the court can review the decision, if necessary. As the record and decision are presented here, there is insufficient information about the basis of the decision to allow review.

## Conclusion

For the foregoing reason, the claimant's motion to reverse (document no. 6) is granted. The Acting Commissioner's motion to affirm (document no. 9) is denied.

The case is remanded under Sentence Four for further administrative proceedings to address the issues raised in this decision and any other appropriate matters.

SO ORDERED.

_____
Joseph DiClerico, Jr.
United States District Judge

October 18, 2016
cc: Sheila O'Leary Zakre, Esq.
    Robert J. Rabuck, Esq.